Filed 7/9/26  In re M.E. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re M.E. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B350239 (Super. Ct. No. 24JD-00286) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. C.M. et al., Defendants and Appellants. | |

C.M. (Mother) and J.E. (Father) appeal from the juvenile court's order terminating their parental rights to their daughter M.E. and son K.E. and selecting adoption as the permanent plan.

(Welf. & Inst. Code,[1] § 366.26.)  They contend remand is necessary for further inquiry pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and a determination on its applicability here.  They also contend the court misapplied the law when it found the beneficial parental relationship exception inapplicable.  (§ 366.26, subd. (c)(1)(B)(i).)  We agree and reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

In December 2024, the San Luis Obispo County Department of Social Services (the Department) was contacted after six-week-old K.E. was admitted to the intensive care unit with head injuries including two skull fractures, multiple brain bleeds, and bleeding in the spinal column.  He was experiencing seizures and difficulty breathing.  He also had rib fractures and a wrist fracture that were older injuries and healing.  His injuries were consistent with abuse.  K.E. and M.E., age three at the time, were taken into protective custody.

The Department filed an amended dependency petition alleging that based on K.E.'s injuries, Mother and Father failed to protect or supervise both K.E. and M.E. (§ 300, subd. (b)), inflicted severe physical abuse of K.E. (*id.*, subd. (e)), and placed M.E. at substantial risk of abuse or neglect due to the abuse of her sibling (*id.*, subd. (j)).  Following a contested jurisdiction/disposition hearing, the juvenile court sustained the allegations, denied reunification services to Mother and Father pursuant to section 361.5, subdivision (b)(5) and (6), and set a section 366.26 hearing.  Mother and Father filed writ petitions challenging the denial of reunification services and the setting of

_____

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

the section 366.26 hearing.  We denied the petitions.  (*C.M. v. Superior Court* (Aug. 20, 2025, B345915) [nonpub. opn.].)

*ICWA*

The Department filed an ICWA compliance/due diligence report in March 2025.  The report documented the Department's ICWA inquiry efforts.  The social worker interviewed maternal grandfather, who reported that his fifth great-grandmother was Cherokee Indian and that he took a DNA test showing he was one percent Native American Indian.  He was unsure of his eligibility for membership with a Native American tribe.  The report stated that based on initial and further inquiry, there was "reason to believe" the children are Indian children.  It further stated that the Department "will continue to make affirmative and ongoing inquiries" and "will send Informal Inquiry Letters to all three Cherokee tribes for claim made by the maternal grandfather."

The section 366.26 report dated August 2025 and the status report dated October 2025 restated the same information and said there was a "reason to believe" the children are Indian children.  The Department again said that it would "continue to make affirmative and ongoing inquiries" and would send informal letters to the three Cherokee tribes.  No letters were sent to these tribes.

*Section 366.26 hearing*

The section 366.26 report recommended Mother and Father's parental rights be terminated and that M.E. and K.E. be found adoptable.  The children had been placed with their

paternal grandparents since May 2025. The paternal grandparents expressed their commitment to adopt the children.

The juvenile court held the contested section 366.26 hearing in October 2025. Following argument, the juvenile court terminated Mother and Father's parental rights over M.E. and K.E. It found the beneficial parental relationship exception did not apply. The court reasoned: "I find that the risk to the children exceeds the parental-child relationship. I have considered the factors in Caden C. The unexplained significant injuries and the chance of that happening again far outweigh the relationship that exists and the potential detriment to [M.E.] I do not find that there is a detriment to [K.E.], but I do find that there is a detriment as to [M.E.] Again, it is outweighed. The best interests of the child are to move forward towards adoption."

## DISCUSSION

### 1. ICWA

Father and Mother contend, and the Department concedes, that remand is necessary to allow further ICWA inquiry and a ruling on the applicability of ICWA to this case.

For purposes of ICWA, an " 'Indian child' " is a child who either is a "member of an Indian tribe" or "is eligible for membership in an Indian tribe" because they are the biological child of a tribe member. (25 U.S.C § 1903(4); see also § 224.1, subd. (a).) The juvenile court and the county child welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rules 5.481(a) & 5.668(c).) " 'The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry,

4

and the duty to provide formal ICWA notice." ' " (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

The duty to inquire begins with the initial contact and obligates the child services agency and the juvenile court to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child. (§ 224.2, subds. (a)–(c).) Extended family members include the child's grandparents, aunts and uncles, siblings, brothers and sisters-in-law, first and second cousins, nieces and nephews, and stepparents. (25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).)

The duty of further inquiry is triggered if the child services agency or the juvenile court has "reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine there is a reason to know that the child is an Indian child." (§ 224.2, subd. (e).) Further inquiry shall be made "as soon as practicable." (*Ibid.*) The Legislature defines "reason to believe" as having "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).)

When the "reason to believe" threshold is reached, the required further inquiry includes, among other things: interviewing the parents and extended family members, contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership, and contacting the tribes and any other person that may reasonably be expected to have information regarding the

5

child's membership status or eligibility.  (§ 224.2, subd. (e)(2)(A)–(C).)

Here, based on maternal grandfather's possible Cherokee Indian lineage, the Department reported to the juvenile court that it had "reason to believe" M.E. and K.E. were Indian children.  "Because it had reason to believe an Indian child may be involved, the Department was obligated . . . to 'make further inquiry regarding the possible Indian status of the child' and to 'make that inquiry as soon as practicable.' " (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 319.)  The Department did not satisfy its duty.  Although the Department stated it would continue to make ongoing and affirmative inquiries and send informal inquiry letters to three Cherokee tribes, nothing in the record suggests the Department has done so.  The record does not reflect that the BIA or any of these tribes have been contacted.  Remand is therefore required for the Department to make such further inquiry.

The record also reflects that the Department was still in the process of conducting its ICWA inquiry of extended family members.  The social worker interviewed Mother and Father, maternal grandparents, maternal step-grandfather, paternal aunt, and paternal grandmother.  In the first addendum ICWA compliance/due diligence report dated August 2025, under the heading "Person of Interest/Follow Up Items," the Department identified the paternal grandfather as a person of interest for the purposes of ICWA inquiry.  The addendum notes that the social worker attempted to contact paternal grandfather in January and again in August 2025, but the record contains no information regarding further attempts thereafter.  Because the paternal grandfather is the children's caregiver, he is a known relative

6

who may be of assistance to the Department in investigating whether the children are Indian children.  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140 (*Dezi C.*).)  The Department also reported that it would "[i]dentify and [c]onfirm [a]dditional [m]aternal and [p]aternal [r]elatives."  But the record does not reflect that further efforts were made.  Thus, it appears that Department's inquiry efforts are still underway.  On remand, the Department should ensure adequate and proper inquiry, including inquiry of extended family members, in compliance with section 224.2.

The Department also concedes the matter must be remanded because the juvenile court did not make a finding on the record regarding the applicability of ICWA.  We accept this concession.  There is no indication in the record that the court considered whether the Department's inquiry was proper, adequate, or duly diligent; nor is there any indication it considered whether ICWA applied.  (§ 224.2, subd. (i)(2).)

On remand, the Department shall make any additional inquiry and documents its efforts, and the juvenile court shall determine whether the inquiry was proper, adequate, and duly diligent, and whether ICWA applies.  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1137.)

### 2. Beneficial parental relationship exception

Mother and Father contend the juvenile court also erred in finding the beneficial parental relationship exception inapplicable as to M.E. because the court misapplied the law as to the third prong of the exception.  We agree.

"At the section 366.26 hearing, the question before the court is decidedly not whether the parent may resume custody of the child.  [Citations.] . . .  Indeed, when the court orders the section 366.26 hearing, reunification services have been

7

terminated, and the assumption is that the problems that led to the court taking jurisdiction have not been resolved." (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).)

The juvenile court's goal at the section 366.26 hearing is to select and implement the permanent plan for the dependent child. (*Caden C., supra,* 11 Cal.5th at p. 630.) Adoption is the " 'permanent plan preferred by the Legislature.' " (*In re D.O.* (2016) 247 Cal.App.4th 166, 173; *Caden C.*, at p. 630.) The court must first determine by clear and convincing evidence "that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).) "If so, and if the court finds that there has been a previous determination that reunification services be terminated, then the court shall terminate parental rights to allow for adoption" unless a statutory exception applies. (*Caden C.*, at pp. 630–631; § 366.26, subd. (c)(1).)

One such exception, the beneficial parental relationship exception, applies when a parent shows: "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C., supra,* 11 Cal.5th at p. 631, italics omitted; § 366.26, subd. (c)(1)(B).) The parent must prove these three elements by a preponderance of the evidence. (*Caden C.*, at p. 636.) "[T]he exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Id.* at p. 630.)

The first element of regular visitation and contact is "straightforward" as the court assesses whether the parents visited consistently to the extent permitted by court orders.

8

(*Caden C.*, *supra*, 11 Cal.5th at p. 632.)  In assessing the second element of whether the child would benefit from continuing the parental relationship, the focus is on the child.  The court considers factors such as " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Ibid*.)  Courts often consider how children feel about, interact with, look to, or talk about their parents.  (*Ibid*.)

In assessing the third element of whether termination of the parental relationship would be detrimental to the child, "the court must decide whether it would be harmful to the child to sever the relationship and choose adoption.  [Citations.]  Because terminating parental rights eliminates any legal basis for the parent or child to maintain the relationship, courts must assume that terminating parental rights terminates the relationship.  [Citations.]  What courts need to determine, therefore, is how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.)  "In each case, then, the court acts in the child's best interest in a specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' " (*Ibid*.)

"When [the juvenile court] weighs whether termination would be detrimental, the court is not comparing the parent's attributes as custodial caregiver relative to those of any potential adoptive parent(s).  Nothing that happens at the section 366.26 hearing allows the child to return to live with the parent.  [Citation.]  Accordingly, courts should not look to whether the

parent can provide a home for the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.)

A hybrid standard of review applies to the juvenile court's findings regarding the beneficial parental relationship exception. We review factual determinations for substantial evidence (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640) and the court's weighing of the relative harms and benefits of terminating parental rights for abuse of discretion. (*Id.* at p. 640.) "When a juvenile court bases its decision to terminate parental rights on improper factors, the trial court abuses its discretion." (*In re M.G.* (2022) 80 Cal.App.5th 836, 852.)

Mother and Father contend the juvenile court considered improper factors in analyzing the third element. We agree. In analyzing the third factor, the court found "detriment as to [M.E.]" if it terminated parental rights. The court focused on "the risk [of harm] to the children," and "unexplained significant injuries," concluding that "the chance" of reinjury "far outweigh[ed] the relationship that exists." In contravention of *Caden C.*, the court erred by not basing its determination on how M.E. would be affected by losing the parental relationship or considering whether terminating that relationship would outweigh the security of an adoptive home. (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) By omitting this analysis, the juvenile court relied on improper factors to conclude that the third prong weighed against application of the beneficial parental relationship exception. "Nothing that happens at the section 366.26 hearing allows the child to return to live with the parent." (*Id.* at p. 634.)

And because the juvenile court found there would be detriment to M.E. if it terminated parental rights, we cannot

conclude the error is harmless.  We therefore reverse the juvenile court's order and direct the court to conduct a proper analysis under the *Caden C.* framework.  (See *In re M.V.* (2023) 87 Cal.App.5th 1155, 1186; *Caden C., supra,* 11 Cal.5th at pp. 633–639.)

## DISPOSITION

The order terminating parental rights to K.E. and M.E. is reversed.  On remand, the juvenile court shall conduct further proceedings to ensure full compliance with ICWA and make appropriate findings as to ICWA's application.  The juvenile court shall also conduct a new section 366.26 hearing in conformance with the principles articulated in *Caden C., supra,* 11 Cal.5th 614.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

11

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant C.M. (Mother).

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant J.E. (Father).

Jon Ansolabehere, County Counsel, Chelsea K. Kuhns, Deputy County Counsel, for Plaintiff and Respondent.